UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILBUR HILIGH**, <br><br> Plaintiff, <br><br> v. <br><br> **WILLIAM S. SANDS, JR., et al.,** <br><br> Defendants. | Case No. 18-cv-2043 (CRC) |

## **MEMORANDUM OPINION**

In January 1997, Wilbur Hiligh was seriously injured while working at a Federal Express facility in Washington, D.C. He retained a law firm, Duncan and Hopkins, P.C., to represent him in seeking remedy. In 2000, the firm filed a civil suit on his behalf but dismissed it after realizing it had sued the wrong defendants. Nearly two decades later, Hiligh has sued the firm and several of its attorneys, alleging malpractice. One Defendant, William S. Sands, Jr., moves for summary judgment, contending he was not Hiligh's lawyer at the time and thus could not have committed malpractice. The firm itself, along with one of its named partners, John C. Duncan, III, moves to dismiss the case or, in the alternative, asks for summary judgment, insisting that the three-year statute of limitations for Hiligh's legal malpractice claim elapsed long ago. Because Sands did not have an attorney-client relationship with Hiligh during the alleged malpractice, the Court will grant his motion. However, the Court will deny the other Defendants' motion because the statute of limitations was tolled while the firm continuously represented Hiligh through 2017.[1]

---

[1] Because the Court can decide these motions without the benefit of Mr. Hiligh's proposed sur-reply, see ECF No. 12-1, it will deny his motion for leave to file a sur-reply, see ECF No. 12.

I.  **Background**

The Court draws this background from the facts alleged in Hiligh's First Amended Complaint, which the Court must take as true at this early stage of the litigation.  See, e.g., Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (citation omitted).  In 1997, Mr. Hiligh worked at a Federal Express facility in Northwest Washington, D.C.  First Amended Complaint ("FAC"), ECF No. 1-1, ¶¶ 3, 8.  On January 31 of that year, while carrying a large package that obscured his line of sight, Hiligh stepped into a gap between a loading dock and an adjacent truck.  Id.  As a result, he suffered permanent injury to his vascular and sexual organs.  Id. ¶¶ 9, 12.  Hiligh alleges that the accident was caused by a defective "bridge plate," a device that connected the loading dock to adjacent trucks.  Id. ¶¶ 7–9.  The bridge plate at issue lacked certain features that allowed it to lay flat between the dock and the trucks.  Id. ¶ 9.  Hiligh fell because he incorrectly assumed that the dock, bridge plate, and truck together formed a flat surface with no gaps.  Id.

Hiligh signed a written fee agreement with Duncan and Hopkins in January 1998.  Id. ¶ 3.  The firm's representation focused in part on Hiligh's workers' compensation claim, conducted through administrative proceedings under D.C. law.  Id. ¶¶ 13–15; see generally D.C. Code §§ 32-1501–1545.  Additionally, Duncan and Hopkins represented Hiligh as he contemplated a civil lawsuit arising from his injury.  FAC ¶¶ 13, 16.  On January 28, 2000, Duncan and Hopkins filed suit on Hiligh's behalf in District of Columbia Superior Court, seeking $5 million in damages stemming from his injury.  Id. ¶ 23.  The suit named as defendants Coakley & Williams Construction Company, Inc., the alleged general contractor for the loading dock, and Allstate Conveyor Service, the alleged designer of the bridge plate.  Id. ¶ 24.  As it turned out, Duncan and Hopkins had sued the wrong defendants, as neither Coakley & Williams nor Allstate were

involved in the design or manufacture of the bridge plate.  Id. ¶ 27.  Hiligh's attorneys filed a notice of voluntary dismissal with prejudice in October 2000.  Id. ¶ 31.

District of Columbia law imposes a three-year statute of limitations for Hiligh's civil claim.  Id. ¶ 23; see also D.C. Code § 12-301. Because he was injured on January 31, 1997, any claim had to be filed by January 31, 2000.  FAC ¶ 23.  By the time his lawyers realized that the suit they had filed three days prior to this deadline named the incorrect defendants, the statute of limitations had lapsed.  As a consequence, Hiligh was unable to file any suit against the actual installer or manufacturer.  Id. ¶¶ 23, 30.

Hiligh alleges that, from the time he hired Duncan and Hopkins until it filed the suit, its attorneys failed to take appropriate action to investigate the proper defendants.  Id. ¶¶ 18–23.  Specifically, he asserts that they failed to visit the site of the accident to examine the bridge plate or consult publicly available records to determine who manufactured it.  Id. ¶¶ 19–20.  Hiligh contends that this failure violated "[t]he standard of care for similarly situated attorneys."  Id. ¶ 21.  Additionally, he insists that the appropriate standard of care also required the attorneys, faced with an impending statute of limitations, to serve other potential defendants in order to preserve the possibility of naming them in the suit through pleading amendments.  Id. ¶¶ 25, 30.

Although Hiligh's civil suit was dismissed in 2000 and the statute of limitations barred new claims for products liability, Duncan and Hopkins continued to represent him in the workers' compensation administrative proceedings.  Id. ¶¶ 15, 33.  This representation lasted years, navigating "numerous Administrative Law Judge hearings, administrative appeals and one D.C. Court of Appeals proceeding in the D.C. workers' compensation system[.]" Id. ¶ 15.  In April 2015, the firm sent Hiligh a letter indicating it would not continue to represent him.  Id.

3

¶ 33; see also Declaration of Wilbur Hiligh ("Hiligh Decl."), ECF No. 9-3, ¶ 11. On April 4, 2017, it formally moved to cease representation in the administrative claim. Hiligh Decl. ¶ 11.[2]

## II. Standard of Review

Defendant Sands moves for summary judgment, which is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must accept as true the nonmovant's evidence and draw all reasonable inferences in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The nonmovant may not, however, rely on "mere allegations" or conclusory statements. Veitch v. England, 471 F.3d 124, 134 (D.C. Cir. 2006).

The other Defendants have moved to dismiss for failure to state claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. When assessing a motion to dismiss under Rule 12(b)(6), the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct." Sissel, 760 F.3d at 4 (citation omitted). When considering a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

---

[2] Because this suit was filed within the three years of the 2015 letter indicating that Hiligh would have to find new counsel, the precise date of termination is immaterial. Throughout this opinion, the Court will refer to 2017 as the year in which Duncan and Hopkins's continuous representation of Hiligh ended.

### III. Analysis

    A. <u>Claim Against William S. Sands, Jr.</u>

Defendant William S. Sands, Jr. has moved for summary judgment, contending that because he did not represent Hiligh until 2014, he cannot be liable for the alleged 2000 malpractice. In the District of Columbia, to prevail on a legal malpractice claim, "a party must prove: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client." <u>Chase v. Gilbert</u>, 499 A.2d 1203, 1211 (D.C. 1985); <u>see also</u> <u>Lewis v. United States</u>, 83 F. Supp. 3d 198, 208 (D.D.C. 2015). "A threshold requirement for a legal malpractice action is the existence of an attorney-client relationship." <u>Geier v. Conway, Homer & Chin-Caplan, P.C.</u>, 983 F. Supp. 2d 22, 36 (D.D.C. 2013). Absent such relationship, there is no duty to breach. <u>Hinton v. Rudasill</u>, 624 F. Supp. 2d 48, 53 (D.D.C. 2009). To determine whether an attorney-client relationship exists,

> courts consider factors such as whether the client perceived that an attorney-client relationship existed, whether the client sought professional advice or assistance from the attorney, whether the attorney took action on behalf of the client, and whether the attorney represented the client in proceedings or otherwise held herself out as the client's attorney.

<u>Teltschik v. Williams & Jensen, PLLC</u>, 683 F. Supp. 2d 33, 45 (D.D.C. 2010).

Sands has submitted a sworn declaration indicating that he neither had substantive communication with Hiligh nor reviewed Hiligh's claim until late 2014, at the earliest. <u>See</u> Declaration of William S. Sands, Jr., Esq. ("Sands Decl."), ECF No. 4-1, ¶ 6. He also declares that he did not perform any legal work on Hiligh's behalf until that time, upon the death of another Duncan and Hopkins lawyer who had been representing Hiligh. <u>Id.</u> According to the declaration, once he did take over Hiligh's case, his work was limited to the administrative

workers' compensation process.  Id. ¶ 7.  Hiligh, for his part, does not meaningfully contend otherwise.  He has submitted a sworn declaration indicating that Sands was part of Duncan and Hopkins and communicated important information to him in 2015 and 2017.  See Hiligh Decl. ¶ 11.  But that declaration contains nothing to suggest that Sands did any work on his behalf during Duncan and Hopkins's early representation, when the malpractice allegedly occurred.[3]  See generally id.  Nor does Hiligh's Complaint include such details.

Instead, in opposing Sands's motion, Hiligh argues that his Complaint pled "respondeat superior liability of Duncan & Hopkins employees, including associate lawyers like defendant Sands."  Plaintiff's Opp'n, ECF No. 9, at 11; see also FAC ¶ 6.  That is not how *respondeat superior* works.  "Under the traditional tort theory of *respondeat superior*, 'an employer may be held liable for the acts of his employees committed within the scope of their employment.'"  Davis v. Megabus Ne. LLC, 301 F. Supp. 3d 105, 110 (D.D.C. 2018) (quoting Boykin v. District of Columbia, 484 A.2d 560, 561 (D.C. 1984)). Nothing in the *respondeat superior* doctrine supports what Hiligh suggests here: that Duncan and Hopkins is liable for the acts of its employees and thus so too is every *other* employee of the firm.  That turns *respondeat superior* on its head to extend liability to *every* employee of any enterprise that is liable for the

---

[3] Hiligh's briefing devotes significant attention to the allegation that Duncan and Hopkins attorneys failed to alert him of a potential malpractice claim, ostensibly in violation of their ethical duties.  See Plaintiff's Opp'n, ECF No. 9, at 1–4, 7–9; see also FAC ¶¶ 38–39.  The Court understands this argument to reflect a separate basis for tolling the statute of limitations.  But to the extent that Hiligh believes it constitutes a separate allegation of malpractice, it does not suffice to state a claim against Sands.  As explained, Sands played no role in the civil case and Hiligh does not suggest that Sands represented him until years later.  While Hiligh contends that attorneys have a duty to alert a client of a potential malpractice claim against them, he provides no authority to suggest that an attorney has a duty to advise clients of potential malpractice by *another* attorney especially where, as here, there is no indication that the attorney knew of it.

actions of one employee.[4]  Sands declares that he was an associate attorney throughout his employment at Duncan and Hopkins, see Sands Decl. ¶¶ 3–4, and Hiligh does not contest this fact.  He thus cannot be liable under a *respondeat superior* theory.

Because Sands was not Hiligh's attorney at the time of the alleged malpractice, he had no duty to Hiligh.  He therefore could not have breached a duty sufficient to support a malpractice action and is entitled to summary judgment.

B.  Claim Against Duncan and Hopkins, P.C. and John C. Duncan, III

Unlike Sands, the other Defendants—the law firm itself as well as partner John C. Duncan, III—do not contest that they were Hiligh's attorneys at the time of the alleged malpractice.  Nor, at this stage, do they suggest an absence of malpractice.  Rather, they insist that, whatever occurred in 2000, the statute of limitations for Hiligh's claim has long since passed.

District of Columbia law provides a three-year statute of limitations for legal malpractice claims.  See D.C. Code § 12-301(8).  It also provides an exception: the continuous-representation rule.  That rule ensures that a legal "malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated."  R.D.H. Communications v. Winston, 700 A.2d 766, 768 (D.C. 1997) (quoting Weisberg v. Williams,

---

[4] Hiligh all but concedes that he has not alleged a claim against Sands, insisting instead that "[i]t is simply too early for defendant Sands to seek dismissal," because Hiligh "has the right to obtain insurance coverage information" under Federal Rule of Civil Procedure 26.  Plaintiff's Opp'n, ECF No. 9, at 10.  This, he contends, might obviate the need to serve the estates of deceased lawyers who he alleges did actually represent him during the malpractice.  Id.  It is hard to make heads or tails of this argument.  Suffice it to say that discovery is available only if a plaintiff has plausibly alleged facts sufficient to state a claim against a defendant.  As explained above, Hiligh has neither alleged facts to support a claim against Sands, rebutted the facts Sands has put forth, nor identified any facts that discovery would prove to support a judgment of malpractice against him.

Connolly & Califano, 390 A.2d 992, 995 (D.C. 1978)).  This exception is key to Hiligh's case.  If it applies, then Hiligh's claim can proceed because his cause of action for the alleged malpractice did not accrue until Duncan and Hopkins stopped representing him—less than three years before he filed this suit.

As other judges have noted, the precise contours of the continuous-representation rule are sometimes murky, and it is not always easy to discern exactly what constitutes a "particular matter" in which a lawyer's representation was continuous.  See, e.g., Jones v. Lattimer, 29 F. Supp. 3d 5, 15 (D.D.C. 2014).  Here, Hiligh's invocation of the rule is premised on Duncan and Hopkins's ongoing representation in his workers' compensation claim, which lasted until 2017.  This representation, he maintains, sufficed to trigger the continuous-representation rule, thus tolling the statute of limitations until three years after Duncan and Hopkins formally terminated its relationship with him.  These facts present somewhat of a close call, but the Court concludes that Hiligh has plausibly alleged continuous representation sufficient to survive a motion to dismiss.

Fellow judges in this district have concluded that "the continuous representation rule may extend to different legal actions where they 'all relate[ ]' to the same issue." Jones, 29 F. Supp. 3d at 15 (quoting De May v. Moore & Bruce, LLP, 584 F. Supp. 2d 170, 182 (D.D.C. 2008)).  Jones v. Lattimer, for example, held that the continuous-representation rule applied to an attorney's representation of a client in two cases—one in federal court and the other in state court—because each case "arose out the same incident involving the wrongful death of the plaintiff's son." Id.  Here, similarly, Hiligh's civil lawsuit and his workers' compensation claim also arise out of the same incident: his January 1997 workplace injury.

To be sure, Jones is no perfect parallel. The two court cases in which the attorney-defendant had represented the client-plaintiff were both filed against the same party, and the client had been offered a settlement agreement to dispose of both cases together. Id. at 16. The Court does not view this as a crucial distinction, however. In De May v. Moore & Bruce, LLP, for example, another judge in the district applied the continuous-representation rule where a law firm had created a trust asset and separately represented the trust during an Internal Revenue Service audit and subsequent Tax Court litigation. See 584 F. Supp. 2d at 174–178. The clients-plaintiffs alleged malpractice in creating the trust and argued that the statute of limitations was tolled due to the ongoing representation during the audit and litigation. The court agreed, explaining that the attorneys-defendants' activities "all related to the trusts and defendants' attempt to structure these trusts to minimize plaintiffs' tax burden." Id. at 182. De May, like Jones, is an imperfect analog: there, the parties had apparently anticipated an audit and litigation when drawing up the trust, see id. at 181, and the continuing representation stemmed from the initial trust, all of which led the court to conclude that the two issues were "inextricably intertwined," id. at 182. But De May demonstrates that the continuous-representation rule is not precluded simply because the nature of the representation involves distinct types of legal work. The Court therefore rejects Duncan and Hopkins' contention that the rule cannot apply simply because Hiligh's administrative workers' compensation claim and civil products liability suit "were in different tribunals, initiated under different sources of law, against different defendants, and sought different forms of relief." Mot. Dismiss, ECF No. 3-1, at 7.

At bottom, Jones and De May suggest that application of the rule is appropriate when an attorney represents a client in separate proceedings stemming from the same event, regardless of whether the types of proceedings are similar or involve similar legal tasks. Here, Hiligh pleads

9

that his agreement with Duncan and Hopkins covered "remedies available," including a civil suit. FAC ¶ 13. He indicates that the attorneys' initial investigation into remedy focused simultaneously on administrative- and litigation-based remedies. Id. Finally, Hiligh alleges that at the time the civil lawsuit was initiated and dismissed, Duncan and Hopkins attorneys were actively engaged in complicated activities on his behalf in the administrative proceedings and continued those activities until 2017. Id. ¶ 15. Taken together, these facts suggest that the two routes to remedy were sufficiently intertwined to toll the statute of limitations.[5]

Further, the facts alleged here are far afield from those in cases where courts in this district have declined to apply the continuous-representation rule. In Rocha v. Brown & Gould, LLP, for example, the court concluded that trial court litigation and a subsequent appeal constituted separate matters, but the analysis centered on the written agreement that the parties had entered. See 101 F. Supp. 3d 52, 69–70 (D.D.C. 2015). The client-plaintiff and attorney-defendant had "formally compartmentalize[d] the representation" in two separate retainer agreements, id. at 70, the first of which "specifically excluded from the scope of [the initial]

---

[5] Moreover, while it does not appear that the D.C. courts have faced precisely the same fact pattern as this one, other jurisdictions' application of the rule is a useful guide to predicting how the D.C. Court of Appeals would assess this situation. See Beach TV Properties, Inc. v. Solomon, 306 F. Supp. 3d 70, 86 (D.D.C. 2018); see also Boley v. Atl. Monthly Grp., 950 F. Supp. 2d 249, 255 (D.D.C. 2013) ("Where, as here, 'the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.'" (quoting Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994))). Specifically, as noted by another court in this district, California intermediate appellate-level courts have produced substantial continuous-representation rule jurisprudence. See Beach TV Properties, 306 F. Supp. 3d at 86. A California court, contending with a similar fact pattern, concluded that where the client-plaintiff alleged that he had "retained [the attorney-defendant] to recover *all damages provided by law* for the injuries he suffered in the accident," the rule applied because "their agreement [had] encompassed not only plaintiff's workers' compensation claim, but also any third-party lawsuits plaintiff may have had against nonemployer parties responsible for his injuries." Baright v. Willis, 151 Cal. App. 3d 303, 309 (Cal. Ct. App. 1984).

representation any appeal," id. at 69. The Rocha court gave great weight to those agreements, as well as actions by the client-plaintiff indicative of her perception that the relationship had been severed between the trial and the appeal. See id. at 71–72. Similarly, the client-plaintiff's own behavior informed the outcome in Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP, No. CIV.A. 10-0454 JDB, 2012 WL 8466139 (D.D.C. Feb. 2, 2012), another case in which a judge in this district found the continuous-representation rule inapplicable. There, the client-plaintiff alleged that the attorneys-defendants had committed malpractice in a patent application and that the continuous-representation rule applied because the defendant law firm had represented it in subsequent infringement claims stemming from the same patent. See id. at *2–*3. The court disagreed, largely because the client-plaintiff had hired a different firm to litigate on its behalf and paid the defendant attorneys for relatively insignificant services. See id. at *13–*15.

Here, by contrast, nothing in Hiligh's Complaint indicates anything but continuous representation. Unlike in Rocha, which was decided at the summary judgment stage, the Court has not yet seen the relevant agreement or any other evidence to rebut a finding of continuous representation. See Rocha, 101 F. Supp. 3d at 58, 63 (citing and quoting from retainer agreements). And unlike Encyclopaedia Britannica, there is no indication that Duncan and Hopkins played a subsidiary or minor role in Hiligh's representation in the ongoing action. See also Winston, 700 A.2d at 769 (applying rule in part because client-plaintiff had not "hire[d] a new attorney" and "stay[ed] the course with" attorney-defendant).

Finally, the policy objectives of the rule counsel in favor of its application here. The continuous-representation rule is designed to achieve two goals. First, it aims to avoid forcing a would-be plaintiff "to choose between (i) disrupting an ongoing lawyer-client relationship to enable bringing a malpractice claim and (ii) continuing the relationship but relinquishing the

11

claim." Seed Co. Ltd. v. Westerman, 832 F. 3d 325, 332 (D.C. Cir. 2016); see also Williams v. Mordkofsky, 901 F.2d 158, 163 (D.C. Cir. 1990) ("The rule's primary purpose is to avoid placing a client in the untenable position of suing his attorney while the latter continues to represent him."). It thus "honor[s] a client's decision to stay with his current counsel notwithstanding indications of malpractice." De May, 584 F. Supp. 2d at 184. Second, the rule seeks to give lawyers "the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages." Winston, 700 A.2d at 769 (quoting Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 21.12, at 817 (4th ed. 1996)). Courts often consider these purposes in assessing whether to apply the rule. See, e.g., Seed, 832 F. 3d at 333–34 (explaining that the court's "conclusion accords with the underlying objectives of the rule"); De May, 584 F. Supp. 2d at 183–84 (considering the policy rationale when concluding that the rule applied); Encyclopaedia Britannica, 2012 WL 8466139, at *15 (declining to apply the rule, in part because "[t]he purpose of the continuous representation rule would not be served by triggering" its application on the facts presented). Here, absent a tolling of the statute of limitations, Hiligh would have been between a rock and a hard place: he could either have pursued his malpractice claim against the very attorneys representing him in an ostensibly complicated and fact-intensive administrative process, or he could have abandoned that claim to avoid irritating his relationship with those attorneys. Application of the continuous-representation rule here serves its principal purpose of freeing Hiligh from that dilemma.

The Court, of course, expresses no view on whether Duncan and Hopkins actually breached a duty of care to Hiligh. And discovery may yet show facts indicating that the representation was not as intertwined as Hiligh's Complaint alleges, as was the case in Rocha. But at this early stage of litigation, accepting as true the facts in that Complaint and without the

benefit of any written agreements between the parties, the Court concludes that Hiligh has plausibly alleged that Duncan and Hopkins's continued work on his behalf sufficed to toll his cause of action until 2017.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant Sands's Motion for Summary Judgment and deny the remaining Defendants' Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: June 10, 2019